# UNITED STATES DISTRICT COURT
## IN THE WESTERN DISTRICT OF MICHIGAN

ARTURO CHAVEZ ROSALES, ET AL,
individually and on behalf of others,                                  Case No.  1:06 CV 0877

                              PLAINTIFFS,                          Honorable  Gordon  J.  Quist
               v                                                  U.S. District Judge

HISPANIC EMPLOYEE LEASING PROGRAM, LLC,
ET AL

                              DEFENDANTS.

---

Gregory J. McCoy (P51419)                   Robert Anthony Alvarez (P66954)
Ronald J. Vander Veen (P33067)              Jose A. Sandoval (P57274)
Attorneys for Plaintiffs                    Attorneys for Plaintiffs
Cunningham Dalman, P.C.                      Law Office of Jose A. Sandoval, PC
321 Settlers Road, PO Box 1767              4543 S. Division Avenue
Holland, MI  49422-1767                     Wyoming, MI  49548
(616) 392-1821                              (616) 257-6807


Ralph E. Musilli (P18132)                   Bruce A. Truex (P26035)
Attorneys for Brick Paving Designs          Mark F. Masters (P48598)
Musilli Brennan Associates, PLLC            Attorneys for Singh Management
24001 Greater Mack                          Secrest Wardle
St. Clair Shores, MI  48080                 30903 Northwestern Highway, PO Box 3040
(586) 778-0900                              Farmington Hills, MI  48333-3040
                                            (248) 851-9500


Marc L. Newman (P51393)
Ann L. Miller (P43578)
Attorneys for H.E.L.P, Porter, Garland,
Midwest, Great Oaks, Twin Lakes, Owen
Tree, TP Associates, Gateway Golf, Oakhurst
Golf, Sefcik Enterprises, Raupp Brothers
The Miller Law Firm, PC
950 West University Drive, Suite 300
Rochester, MI  48307
(248) 841-2200

---

## PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

1.    This is a civil action brought on behalf of the named plaintiffs, Mexican nationals, and all similarly situated H2B workers (hereinafter collectively referred to as "**Plaintiffs**") who were recruited by Defendants Hispanic Employee Leasing Program, LLC d/b/a HELP Staffing, L.L.C., (hereinafter referred to as "**HELP**"), or Anthony Porter (hereinafter referred to as "**Porter**"), to work for HELP or the other Defendants in various locations in Michigan during the years of 2003-2007.    Defendant HELP and Porter recruited Plaintiffs under the H-2B Alien Labor Certification Program to perform primarily landscaping and lawn maintenance services for the various other Defendants. Plaintiffs complain that the Defendants violated their rights under the Fair Labor Standards Act (FLSA), 28 USC §201 et seq..  Plaintiffs also contend that Defendants breached the terms and conditions of their employment contract.

## JURISDICTION

2.     This court has jurisdiction over Plaintiffs' FLSA claims and breach of contract claims pursuant to 28 U.S.C. §1331 and §1337.

3.    In the alternative, this Court has supplemental jurisdiction over the Plaintiff's breach of contract claim pursuant to 28 U.S.C. §1367

## PARTIES

4.    Plaintiffs Arturo Chavez Rosales, J. Luz Cerrano Cisneros, Celestino Cerrano Cisneros and Ramon Serrano Cisneros are citizens of México who reside permanently in México. These named Plaintiffs bring this case on behalf of themselves and a class of similarly situated Mexican workers defined as "All persons recruited, contracted or employed by

HELP Staffing, LLC under the H-2B visa program at any time during the period 2003 through 2007"  The named Plaintiffs and the class they seek to represent are hereinafter referred to collectively as "Plaintiffs."

5.    Defendant HELP is a Michigan limited liability company that provides manual labor to various companies in Michigan.

6.    Defendant Porter is the owner and President of Defendant HELP and is an alter ego of Defendant HELP.

7.    Defendant Garland, Inc. is a Michigan corporation doing business as "Garland Golf" that retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

8.    The Tiede Company Landscape Services, Inc. is a Michigan corporation, doing business as "Tiede Landscaping" and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

9.    Midwest Landscape, Inc. is a Michigan corporation and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

10.   Great Oaks Maintenance & Horticultural Services, L.L.C., (hereinafter "Great Oaks") is a Michigan limited liability company and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

11.   Twin Lakes Golf Club, L.L.C. is a Michigan limited liability company, and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

12. Owen Tree Service Specialty Corporation (hereinafter "Owen Tree Service") is a Michigan corporation doing business as "Owen Specialty Services, Inc." and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

13. Biondo Brothers Old World European Paving, Inc. (hereinafter "Biondo Brothers") is a Michigan corporation and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

14. TP Associates, LLC is a Michigan limited liability company and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

15. Gateway Golf, LLC is a Michigan limited liability company and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

16. Oakhurst Golf, LLC is a Michigan limited liability company and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

17. Defendant Raupp Brothers, LLC is limited liability company and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

18. Defendant Sefcik Enterprises, Inc. is a Michigan corporation and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

19. Defendant Brick Paving Designs, Inc. is a Michigan corporation and it retained the services of Defendant HELP to obtain workers for all or some of the years 2003-2007.

20. Defendants Garland, Inc., The Tiede Company Landscape Services, Inc.,

Midwest Landscape, Inc., Great Oaks, Twin Lakes Golf Club, L.L.C., and Owen Tree Service, Biondo Brothers, TP Associates, LLC, Gateway Golf, LLC, Oakhurst Golf, LLC, Raupp Brothers, LLC, Sefcik Enterprises, Inc. , and Brick Paving Designs, Inc are hereafter collectively referred to as the "Landscaping Companies."

## CLASS ALLEGATIONS

21. Plaintiffs bring this action on behalf of a class of all similarly situated workers defined as: "All persons recruited, contracted or employed by HELP Staffing, LLC under the H-2B visa program at any time during the period 2003 through 2007." Plaintiffs do not bring Counts I or II on behalf of any executive, administrative, and professional employees exempt from coverage under the FLSA.

22. With respect to Counts I and II, Plaintiffs bring this action as a collective action under the FLSA on behalf of the class defined in paragraph 21. A collective action is appropriate because the employees described are "similarly situated" to the named plaintiffs. 29 USC § 216(b).

23. Plaintiffs bring Counts III and IV of this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined in paragraph 21.

24. Certification of a class of persons who may receive relief pursuant to Counts III and IV is appropriate pursuant to Fed. Civ. P. 23(b)(3) because:

   a. the class is so numerous that it is impractical to bring all its members before this Court. On information and belief the class consists of more than 500 H-2B workers;

b.     there are questions of law and fact common to the class;

c.     the named plaintiffs' claims are typical of those of the class;

d.     the named plaintiffs will fairly and adequately protect the interests of the class, and plaintiffs have retained counsel experienced in matters of this type;

e.     questions of law common to the members of the class predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

f.     testimony and evidence about Defendants' employment and/or recruitment practices will affect and apply to the claims of all class members.  Purely individual questions will be restricted to damage questions should liability be established. If no class action is certified, it will make it impractical for individual class members to pursue relief or may lead to a large number of separate lawsuits, all of which will rely on the same kind of proof and take roughly the same amount of time, causing an unnecessary burden on the courts.

## FACTS COMMON TO ALL COUNTS

25.     At all times relevant to this action, one or more of the Defendants were Plaintiffs' "employers" within the meaning of the Federal Fair Labor Standards Act (hereinafter "FLSA"), 29 USC § 203(d).

26.     Plaintiffs were recruited by Defendant HELP and Porter, either directly or through an agent, in or around their home towns in the state of Guanajuato, Mexico.  They worked, are currently working or are scheduled to work for one or more of the Defendants in

Michigan for periods of time between February and December of each year between 2003 and 2007.

27. At all times relevant to this action, one or more of the Defendants "suffered or permitted" Plaintiffs to work and thus "employed" Plaintiffs within the meaning of the FLSA, 29 USC §203(g).

28. At all times relevant to this action, Plaintiffs were "employees" of one or more of the Defendants within the meaning of the FLSA, 29 USC §203(e)(1).

29. In each of the relevant years, the Defendant HELP and Porter offered Plaintiffs employment, either directly or through an agent, that included, inter alia, the contract terms set forth in the following documents:

   a.   Application for Alien Certification known as ETA form 750 (hereinafter ETA 750) for each of the relevant years (See Application for Alien Employment Certification (Form ETA 750) at exhibits previously filed under docket # 48 as 48-2, 48-3, 48-4, 48-5, 48-6, 48-7, 48-8, 48-9, 48-10, 48-11, 48-12, 48-13, 48-14, 48-15, 48-16);

   b.   Additional documents submitted to either the INS or the USCIS of the Department of Homeland Security and to the Department of State;

   c.   The regulations governing the foreign guestworker visas, 20 C.F.R. part 655;

   d.   The written disclosure of the terms offered by Defendant HELP provided to the Plaintiffs; and

e. An "Employment Agreement" and "Supplemental Employment Agreement" detailing additional terms and conditions of employment. (See Exhibit previously filed under docket # 48 as # 48-1)

30. Each of the ETA 750 forms submitted to the U.S. Department of Labor included the following certifications and promises:

a. "The wage offered equals or exceeds the prevailing wage and I guarantee that if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work."

b. "The job opportunity's terms, conditions and occupational environment are not in contrary to Federal, State or Local law."

31. In each of the relevant years, Plaintiffs signed the "Employment Agreement" and "Supplemental Employment Agreement" stating the terms and conditions of employment in Mexico prior to coming to the United States. The "Employment Agreement" and the "Supplement to the Employment Agreement" contain, among other things, the following promises:

a. Compliance with the Mexican Federal Law of Employment;

b. When work is carried out in other countries, the overtime will be paid in accordance with the legal requirements of that country;

c. The Employee understands that he is rendering his services to an American Company. The worker is in agreement that, the duty of the office in Irapuato, consists strictly of helping with the documentation for processing of the Visa at

the American Consulate;

d.      Submitting to the jurisdiction and the laws of the state where the work is to be carried out with regard to the construction, execution and fulfillment of the terms and conditions of the "Employment Agreement"; and

e.      "Salary: Will be paid in accordance with the laws that are in effect."

32.      The terms and conditions of employment offered by Defendant HELP and Porter on behalf of the Landscape Companies induced the Plaintiffs to travel from their home to the State of Michigan to work for one or more of the Defendants.

33.      Plaintiffs were brought to Michigan in 2003-2007 to work for one or more of the Defendants.

34.      Each year, in order to get to Michigan to work under their contracts with Defendants, Plaintiffs incurred expenses that included, but were not limited to, visa fees, travel fees, lodging fees and subsistence during travel from their residence in Mexico to the State of Michigan.  In order to return to Mexico at the end of their work for Defendants, Plaintiffs had to incur the costs of transportation to the place of recruitment in Mexico.  Both the in-bound and out-bound expenses are hereafter collectively referred to as "Expenses."

35.      All of the Expenses were primarily for the benefit of one or more of the Defendants.

36.      At least some of the Expenses, under Mexican Federal Employment Law in effect at the place of recruitment, required to be borne directly by the Defendants or their agents as recruiters and/or contractors of Mexican citizens in Mexico for work in the United States (see Article 28, Section I(b) of the Federal Labor Law of Mexico).

37. As a matter of policy that the Defendants applied to all Plaintiffs, the Defendants did not reimburse Plaintiffs during their first week of work for the Expenses.

38. As a result of the Expenses and the Defendants' policy not to reimburse those Expenses, the Plaintiffs did not receive the minimum wage, overtime premium, the prevailing wage and/or living wage mandated by the FLSA, the H2B regulations, the "Employment Agreement" or applicable local law during their first work week or their last work week.

39. During Plaintiffs' employment with Defendants, Defendants made deductions from Plaintiffs' paychecks that included, but were not limited to, rent and uniforms.

40. Defendants made these deductions without Plaintiffs' express written consent for *each* paycheck from which deductions were made in violation of state law.

41. All of the deductions described in paragraph 39 were primarily for the benefit of the Defendants.

42. There was not a separate written consent by the employee for each paycheck from which a deduction is made, as required by Michigan law.  MCL 408.477(2).

43. As a result of the deductions described in paragraph 39, the Plaintiffs did not receive the federal minimum wage, overtime premium, prevailing wage and/or living wage for hours worked per week during the work weeks in which these deductions were made.

44. Defendants did not provide Plaintiffs with hours of employment and hourly rate of pay as promised in the ETA 750, which was an integral part of the parties' contract for employment.

45.     Defendants did not pay Plaintiffs the wages promised in the "Employment Agreement" and "Supplemental Employment Agreement" that induced Plaintiffs into traveling to Michigan for work.

46.     At all relevant times, the Defendants suffered or permitted the Plaintiffs to work or provide services to them.

47.     At all relevant times, the Defendants controlled, supervised and directed the Plaintiffs in the performance of their work.

48.     At all relevant times, the Defendants provided Plaintiffs with the necessary training, equipment and uniforms.

49.     During their employment with Defendants, the Plaintiffs worked in excess of forty hours in a work week.

50.     Defendants did not pay Plaintiffs the federal minimum wage for all hours worked.

51.     Defendants did not pay Plaintiffs the prevailing wage (and/or living wage, where applicable) for all hours worked.

52.     Defendants are employers or joint employers of Plaintiffs.

53.     Defendants did not pay Plaintiff the overtime premium for all hours worked in excess of forty (40) hours per week.

54.     Defendants failed to pay Plaintiffs for all hours worked.

55.     Defendants failed to pay Plaintiffs all wages earned.

56.     Defendants' failure to pay wages in compliance with the Fair Labor Standards Act was willful.

57.     Defendants failed to post in a conspicuous location a poster detailing Plaintiff's rights under the Fair Labor Standards Act as required under 29 C.F.R. § 516.4.

58.     Defendants misrepresented Plaintiffs' rights under the Fair Labor Standards Act by requiring them to sign contracts which were contrary to their rights under the Fair Labor Standards Act in an effort to make Plaintiffs believe that they themselves were required to pay all their costs associated with obtaining employment with Defendants.

## COUNT I

## Violation of the Federal Fair Labor Standards Act,  29 USC § 201 et. seq. – Failure to Pay Minimum Wage (due to unlawful deductions and failure to pay for hours worked)

59.     Plaintiffs incorporate by reference the above paragraphs.

60.     The FLSA requires an employer to pay employees the federally mandated minimum wage of $5.15 per hour. 29 USC §206.

61.     Defendants violated the FLSA by making unlawful deductions that drove Plaintiffs' effective wages below the applicable minimum wage.

62.     Defendants violated the FLSA by failing to reimburse the Plaintiffs for the Expenses which were primarily for the benefit of Defendants, during the first and last weeks of work and which resulted in lowering the Plaintiffs' hourly wage below the required minimum wage.

63.     Defendants violated this section by failing to pay the Plaintiffs the minimum wage for all hours worked.

64.     The FLSA, 29 USC § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his/her unpaid minimum wages, plus an additional equal amount in liquidated damages, costs of court, and reasonable attorney fees.

### COUNT II

### Violation of the Federal Fair Labor Standards Act, 29 USC § 201 et. seq. – Failure to Pay Overtime

65.     Plaintiffs incorporate by reference the above paragraphs.

66.     The FLSA, 29 USC §207, provides that an employer must pay an employee one and a half times the employee's regular rate for hours in excess of forty hours per week.

67.     Defendants violated the FLSA since Plaintiffs were not all at times paid a rate of one and a half times their regular rates for hours worked in excess of forty (40) hours.

68.     The FLSA, 29 USC § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his/her unpaid overtime compensation, plus an additional equal amount in liquidated damages, costs of court, and reasonable attorney fee.

### Count III

### Breach of Contract – Employment Agreement and Supplemental Employment Agreement

69.     Plaintiffs incorporate by reference the above paragraphs.

70.     The Defendants, through Defendant HELP, recruited Plaintiffs to work in Michigan performing general labor.

71.     At the time of recruitment, Defendant HELP, on behalf of itself and one or more of the other Defendants, offered Plaintiffs employment, either directly or through an agent, and made promises and representations regarding that employment.

72.     Specifically, the Defendants agreed to abide by the terms of the "Employment Agreement" and the "Supplemental Employment Agreement" which the Defendants had to agree to be bound by in order to recruit and employ the Plaintiffs under the H2B program.

73.     Plaintiffs agreed to these terms. Based on this agreement and in accepting the offer of employment, Plaintiffs left their families and traveled from Mexico to one or more of the Defendants' place of business in Michigan and presented themselves for work.

74.     The Defendants breached the employment contract by failing to comply with the promised terms and conditions of employment in the Employment Agreement and the Supplemental Employment Agreement.

## Count IV

## Breach of 3rd Party Beneficiary Contract (ETA 750)

75.     Plaintiffs incorporate by reference the above paragraphs.

76.     At the time of recruitment, Defendant HELP, on behalf of itself and one or more of the Landscaping Companies, offered Plaintiffs employment, either directly or through an agent, and made promises and representations regarding the terms of that employment to the U.S. Department of Labor which referenced a class of persons, i.e, H2-B works, who would be entitled to those terms of employment.

77.     The employer of the H2-B worker includes, but is not limited to, in the case of a joint employer, any party listed as the employer on the ETA 750.

78.     Defendants agreed to abide by the terms of the ETA 750 which the Defendants had to agree to be bound by in order to recruit and employ the Plaintiffs under the H2B program.

79.     The ETA 750 is an express promise to act for the benefit of a 3rd party, i.e, H2-B workers.

80.     By Defendant HELP submitting the ETA 750 on behalf of itself and Defendant Landscaping Companies, it had undertaken to give or do or refrain from doing something directly to or for a specific group of people, to be identified in the future.

81.     Plaintiffs became some of the H2-B workers referred to in the ETA 750, or otherwise became ascertainable beneficiaries, and they are intended 3rd party beneficiaries of the ETA 750.

82.     As 3rd party beneficiaries of the ETA 750, Plaintiffs have contractual rights thereunder.

83.     The Defendants breached the employment terms as described by the ETA 750 by failing to comply with the promised terms and conditions of employment described in the ETA 750.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs' request the following relief:

1.      Certifying this case as a collective action in accordance with 29 U.S.C. §216(b) with respect to the FLSA claims set forth in Counts I and II;

2.      Certifying this case as a class action in accordance with Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to the claims set forth in Counts III and IV;

3.      Declaring that the Defendants willfully violated the Fair Labor Standards Act and their attendant regulations as set forth in Counts I and II;

4.   Declaring that the Defendants violated their obligations under the Fair Labor Standards Act (FLSA) and breached Plaintiffs' employment contract;

5.   Granting judgment in favor of Plaintiffs and against defendants, jointly and severally, on the Plaintiffs' Fair Labor Standards Act claim as set forth in Counts I and II and awarding each of them the amount of his/her unpaid minimum wages and/or overtime wages, along with an equal amount as liquidated damages;

6.   Granting judgment in favor of Plaintiffs in an amount to be determined at trial for the violations of Counts III and IV;

7.   Awarding Plaintiffs their reasonable attorneys fees pursuant to the Fair Labor Standards Act (FLSA), 28 USC §201 et seq.;

8.   Awarding Plaintiffs pre- and post-judgment interest on their damages;

9.   Awarding Plaintiffs such other and further relief as the Court may deem just or equitable.

Respectfully submitted,

**Cunningham Dalman PC**

Dated:  March 7, 2008

By  /s/ Gregory J. McCoy
Ronald J. Vander Veen (P33067)
Gregory J. McCoy (P51419)
Attorneys for the Plaintiffs
321 Settlers Road
Holland, MI 49423
(616) 392-1821

Robert Anthony Alvarez (P66954)
Jose A. Sandoval (P57274)
4543 S. Division Ave.
Wyoming, MI 49548